**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SPINNAKER INSURANCE COMPANY, | : | |
| | : | Civil Action No.: 2:25-cv-00330 |
| *Plaintiff*, | : | |
| | : | |
| v. | : | **COMPLAINT FOR** |
| | : | **DECLARATORY JUDGMENT** |
| HEART OF GOLD TITLE, LLC, | : | |
| | : | |
| *Defendant*. | : | |

Plaintiff, Spinnaker Insurance Company ("Spinnaker"), by and through its attorneys, Collins, Roche, Utley & Garner, LLC, by way of Complaint for Declaratory Judgment against Heart of Gold Title, LLC ("HOGT"), alleges as follows:

## NATURE OF THE ACTION

1. This insurance coverage dispute arises from a lawsuit filed by Fadel Elkhairi and Mais Khourdaji ("Buyers") against real estate broker, Platinum Real Estate Professional, LLC, and HOGT, a title insurance company, in Franklin County Common Pleas Court, Case No. 24-cv-8239 ("Underlying Action").

2. In the Underlying Action, Buyers alleged that they were tricked by a fraudster into wiring money to a false bank account instead of to HOGT, which money would have been used to purchase an investment property. Buyers allege that HOGT and Platinum were negligent by failing to prevent the fraudster's scam and seek to recover from them the amount of money wired to the fraudster.

3. HOGT requested coverage from Spinnaker under two successive commercial cyber policies (the "Coverage Claim"). Spinnaker has denied the Coverage Claim under both policies.

4. Spinnaker brings this action seeking a declaration from this Court that there is no coverage afforded under the Policies for the Underlying Action

## PARTIES

5. Spinnaker is an Illinois corporation, engaged in the insurance business, domiciled in Illinois with administrative offices at 1 Pluckemin Way, Suite 102, Bedminster, New Jersey 07921.

6. HOGT is an Ohio limited liability company with its principal place of business at 5919 Karric Square Drive, Dublin, Ohio 43016.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201 and 2202 as: (i) an actual controversy exists between the parties; (ii) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and (iii) the matter is between citizens of different States.

8. Venue lies in the United States District Court, Southern District of Ohio, under 28 U.S.C. § 1391 because at least one of the parties has a principal place of business in the Southern District of Ohio.

## THE UNDERLYING ACTION

9. According to the complaint in the Underlying Action ("Underlying Complaint"), in October 2023, Buyers began looking for an investment property in Dublin, Ohio.

10. The Underlying Complaint alleges that Buyers retained Maria Smialek of Platinum as their broker.

11. The Underlying Complaint alleges that on February 19, 2024, Buyers put in a verbal cash offer for $450,000 on a property located at 6633 Dale Drive, Unit 324, Dublin, Ohio (the "Premises").

12. The Underlying Complaint alleges that Smialek provided Buyers with a real estate purchase contract, which they executed, and that the closing was scheduled for March 7, 2024.

13. The Underlying Complaint alleges that on February 21, 2024, Natali Crozier of The Friel Group, an affiliate of Platinum, emailed Buyers the fully executed contract and advised that Buyers should send an earnest money deposit of $4,850 to HOGT and that HOGT would be in touch with further information.

14. The Underlying Complaint alleges that the closing was extended to give Buyers additional time to secure the purchase funds.

15. The Underlying Complaint alleges that on February 23, 2024, Hannah Kendall of HOGT emailed Buyers with wiring instructions for the earnest money payment, which Buyers prompted wired.

16. The Underlying Complaint alleges that on March 5, 2024, the Buyers received an email they believed was from Kendall of HOGT, but was in fact from a scam email from the fraudster. The fraudster's email address differed slightly from Hannah's email address, but they did not notice.

17. The Underlying Complaint alleges that the email acknowledged the earnest payment amount of $4,850 and requested the remaining balance of $480,150. Thereafter, the fraudster sent the Buyers false wiring instructions.

18. The Underlying Complaint alleges that on March 6, 2024, the Buyers wired the fraudster $480,150. Several days later, the Buyers discovered the fraud.

19. In the Underlying Complaint, the Buyers allege that HOGT and Platinum were negligent by, among other things, failing to protect Buyers from the fraudster. As damages, they seek the precise amount wired to the fraudster: $480,150, plus interest and other costs.

**THE POLICIES**

20. Spinnaker Insurance Company issued successive claims made and reported commercial cyber insurance policies to HOGT for the policy periods August 7, 2023 to August 7, 2024 (the "2023 Policy") (attached hereto as Exhibit A), and August 7, 2024 to August 7, 2025 (the "2024 Policy") (attached hereto as Exhibit B) (collectively the "Policies"). The Policies have the same material terms.

21. The Declarations page of the Policies states:

> THIS INSURANCE POLICY PROVIDES COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS AND ONLY APPLIES TO CLAIMS FIRST MADE AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED PERIOD

22. The first page of Form SP CW 99 05 22 states:

> THE INSURANCE POLICY PROVIDED UNDER THIS POLICY FOR CLAIMS MADE AGAINST YOU IS ON A CLAIMS MADE AND REPORTED BASIS, AND APPLIES TO CLAIMS ONLY IF THEY ARE FIRST DISCOVERED BY YOU DURING THE POLICY PERIOD AND REPORTED TO US DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD

23. Insuring Agreement 5 - **Security Breach Liability** Including Payment Card Industry (PCI) Fines and Penalties, provides:

> We will pay for:
>
> a. **Loss** that the **Insured** becomes legally obligated to pay and **Defense Expenses** as a result of a **Claim** that is **Discovered** during the Policy Period or any **Extended Reporting Period**, for a **Wrongful Act** or a series of **Interrelated Wrongful Acts** taking place on or after Your first date of continuous coverage with Us and before the end of the Policy Period.
>
> ...
>
> With respect to this Insuring Agreement 5:

>**i. Loss** means:
>(a) Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements; or
>
>                         ***
>
>ii. **Defense Expenses** means the reasonable and necessary fees (attorneys' and experts' fees) and expenses incurred in the defense or appeal of a **Claim**, including the cost of appeal, attachment or similar bonds (without any obligation on Our part to obtain such bonds) but excluding wages, salaries, benefits or expenses of Your **Employees**.

24. The Policies include the following relevant definitions:

    **Claim** means:

    a. A written demand for monetary or nonmonetary damages, including but not limited to injunctive relief;
    b. A civil proceeding commenced by the service of a complaint or similar proceeding;
                         ***

    against any Insured for a **Wrongful Act**, including any appeal therefrom

    **Wrongful Act** means any actual or alleged:

    a. **Security Breach**;
    b. Failure to prevent unauthorized access to, or use of, electronic or non-electronic data containing **Personal Information**;
    c. Failure to prevent the transmission of a **Virus** through a **Computer System** into a computer network, any application software, or a computer operating system or related network that is not rented, owned, leased by, licensed to or under the direct operational control of the **Insured**; or
    d. Failure to provide notification of any actual or potential **Security Breach** if such notification is required by any security breach notification law;

    by, or asserted against, an **Insured**.

    **Security Breach** means a privacy breach that includes the acquisition of **Personal Information** held within a **Computer**

**System** or in non-electronic form at while in the care, custody or control of the **Insured** or authorized **Third Party** by a person: i) not authorized to have access to such information; or ii) authorized to have access to such information but whose access results in the unauthorized disclosure of such information.

**Personal Information** means any information not available to the general public for any reason through which an individual may be identified including, but not limited to, an individual's:

a. Social security number, driver's license number or state identification number;
b. Protected health information;
c. Financial account numbers;
d. Security codes, passwords, PINs associated with credit, debit or charge card numbers which would permit access to financial accounts; or
e. Any other nonpublic information as defined in **Privacy Regulations**.

**Computer System** means any computer, including transportable or handheld devices, electronic storage devices and related peripheral components; any systems and applications software, or any related telecommunications networks connected to or used in connection with such computer or devices: i) which collects, transmits, processes, stores or retrieves Your **Electronic Data**; and ii) which is:

a. owned by You;
b. leased by You and operated by any **Insured**;
c. owned and operated by an **Employee** who has agreed in writing to Your personal devise use policy; or
d. operated by an authorized **Third Party**, but only with respect to Your **Electronic Data**.

**Electronic Data** means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on electronic storage devices including, but not limited to, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment. **Electronic Data** is not tangible property.

**Discovery** or **Discovered** means the time when any **Insured** first becomes aware of facts which would cause a reasonable person to believe that a **Loss** covered by this Policy has been or will be incurred, regardless of when the act or acts causing or contribution

to such **Loss** occurred, even though the exact amount of details of **Loss** may not then be known.

**Discovery or Discovered** also means the time when any **Insured** first receives notice of an actual or potential **Claim** in which it is alleged that You are liable to a third party under circumstances which, if true, would constitute a **Loss** under this Policy.

25. The Policies include a Duties in the Event of Claim or Loss provision set out in SECTION VI- CONDITIONS at paragraph 14, which provides in relevant part:

After a situation that results in, or may result in, a **Loss** covered under this Policy is **Discovered**, You must notify Us in writing as soon as practicable, but not to exceed thirty (30) days from the date **Discovered**, and cooperate with Us in the investigation and settlement of the **Claim** or **Loss**.

26. Exclusion 16 in the Policies provides that "we will not be liable for **Loss** or **Defense Expenses** directly or indirectly based upon, attributable to or arising out of" "Any **Cyber Incident**, **Extortion Threat**, **Security Breach**, **Wrongful Act**, or **Interrelated Wrongful Acts** that any **Insured** became aware of prior to the effective date of this Policy."

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST HOGT
**(Declaratory Judgment – No Coverage)**

27. Spinnaker repeats and re-alleges each and every allegation in Paragraphs 1 through 26 as if fully set forth herein.

28. Spinnaker has no obligation to defend and indemnify HOGT in connection with the Underlying Action for the following reasons:

   a. The **Claim** was not made, reported, and discovered during the 2023 Policy's policy period;

   b. The **Loss** was not the result of a **Claim** for a **Wrongful** Act under the Security Breach Insuring Agreement;

   c. HOGT breached the notice condition in the Policies; and

   d. Exclusion 16 bars coverage under the 2024 Policy.

      e. The **Claim** may not have been made, reported, and discovered during the 2024 Policy's policy period;

29. An actual case or controversy exists between Spinnaker and HOGT concerning Spinnaker's alleged obligation to provide coverage under the Policies in connection with the Underlying Action

30. A resolution of this dispute is necessary to resolve Spinnaker's alleged duty to defend and indemnify in connection with the Underlying Action.

31. Therefore, Spinnaker seeks a judicial determination and declaration that Spinnaker is not obligated to defend and indemnify HOGT in connection with the Underlying Action.

**WHEREFORE**, Plaintiff, Spinnaker Insurance Company, respectfully requests that the Court enter a judgment:

      a. declaring that Spinnaker has no duty to defend and indemnify HOGT under the Policies in connection with the Underlying Action; and

      b. for such other and further relief as the Court deems just and proper.

DATED this 31st day of March, 2025

**COLLINS, ROCHE, UTLEY & GARNER, LLC**

_____
**SUNNY L. HORACEK** (**0089178**)
shoracek@cruglaw.com
655 Metro Place South, Suite 200
Dublin, Ohio 43017
Phone: (614) 901-9600
Fax: (614) 901-2723

*Attorneys for Plaintiff*
*Spinnaker Insurance Company*