**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SPINNAKER INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-00330 |
| | ) | |
| vs. | ) | Judge Algenon L. Marbley |
| | ) | |
| HEART OF GOLD TITLE, LLC, | ) | Magistrate Kimberly A. Jolson |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT HEART OF GOLD TITLE, LLC'S ANSWER TO THE COMPLAINT OF SPINNAKER INSURANCE COMPANY, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL**

---

**ANSWER**

---

In response to the Complaint filed by Plaintiff Spinnaker Insurance Company,

Defendant Heart of Gold Title, LLC ("*Defendant*") answers as follows:

1. Defendant admits the allegations contained in Paragraph 1.

2. Defendant admits that the Underlying Complaint speaks for itself and denies

all allegations inconsistent therewith as alleged in Paragraph 2.

3. Defendant admits that it requested coverage from Spinnaker and from

Cowbell Insurance Agency LLC and that Spinnaker and Cowbell Insurance Agency LLC

denied coverage to Defendant.

1

4.      Paragraph 4 contains a statement of what Spinnaker seeks from this action to which no response is required. To the extent a response is necessary, Defendant denies the allegations contained in Paragraph 4.

5.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 and therefore denies the same.

6.      Defendant admits the allegations contained in Paragraph 6.

7.      Paragraph 7 contains a legal conclusion to which no response is required. To the extent a response is necessary, Defendant denies the allegations contained in Paragraph 7.

8.      Paragraph 8 contains a legal conclusion to which no response is required. To the extent a response is necessary, Defendant denies the allegations contained in Paragraph 8.

9.      Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 9.

10.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 10.

11.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 11.

12.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 12.

13.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 13.

14.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 14.

15.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 15.

16.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 16.

17.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 17.

18.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 18.

19.     Defendant admits that the Underlying Complaint speaks for itself and denies all allegations inconsistent therewith as alleged in Paragraph 19.

20.     Defendant admits that the Exhibits A and B look to be copies of the Policies that were issued to Defendant and that the Policies speak for themselves and denies all allegations inconsistent therewith as alleged in Paragraph 20.

21.     Defendant admits that the Policies speak for themselves and denies all allegations inconsistent therewith as alleged in Paragraph 21.

22.     Defendant admits that the Policies speak for themselves and denies all allegations inconsistent therewith as alleged in Paragraph 22.

23.     Defendant admits that the Policies speak for themselves and denies all allegations inconsistent therewith as alleged in Paragraph 23.

24.     Defendant admits that the Policies speak for themselves and denies all allegations inconsistent therewith as alleged in Paragraph 24.

25.     Defendant admits that the Policies speak for themselves and denies all allegations inconsistent therewith as alleged in Paragraph 25.

26.     Defendant admits that the Policies speak for themselves and denies all allegations inconsistent therewith as alleged in Paragraph 26.

27.     In response to Paragraph 27, Defendant incorporates and reasserts its previous and subsequent responses as if fully re-written.

28.     Defendant denies the allegations contained in Paragraph 28.

29.     Paragraph 29 contains a legal conclusion to which no response is required. To the extent a response is necessary, Defendant denies the allegations contained in Paragraph 29.

30.     Paragraph 30 contains a legal conclusion to which no response is required. To the extent a response is necessary, Defendant denies the allegations contained in Paragraph 30.

31.     Paragraph 31 contains a legal conclusion to which no response is required. To the extent a response is necessary, Defendant denies the allegations contained in Paragraph 31.

Defendant denies all allegations not specifically admitted herein, all headings, subparts, and WHEREFORE clauses contained in the Complaint.

### AFFIRMATIVE DEFENSES

1.      The Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiff's claims are barred by Plaintiff's breach of the relevant agreements.

3.      Plaintiff's claims are barred due to Plaintiff's own acts and negligence.

4.      Plaintiff's claims are barred due to the acts and negligence of third parties.

5.      Plaintiff's claims are barred due to their assumption of risks.

6.      Plaintiff's claims are barred due to waiver and laches.

Defendant reserves the right to amend this Answer and add Affirmative Defenses.

**WHEREFORE**, Defendant prays for judgment as follows:

> ➢ That Plaintiff takes nothing by virtue of the Complaint;
>
> ➢ That the Court dismiss the Complaint with prejudice; and
>
> ➢ For such other and further relief as this Court deems just and proper.

## COUNTERCLAIM

Pursuant to Rules 13 and 19 of the Federal Rules of Civil Procedure, Defendant/Counterclaim Plaintiff Heart of Gold Title, LLC ("*Heart of Gold*") brings this Counterclaim against Counterclaim Defendants Spinnaker Insurance Company ("*Spinnaker*") and Cowbell Insurance Agency, LLC ("*Cowbell*") (collectively, "*Counterclaim Defendants*") and states:

### PARTIES, JURISIDICTION, & VENUE

1.      Heart of Gold is an Ohio LLC with its principal place of business in Franklin County, Ohio.

2.      Spinnaker is an Illinois corporation with its principal place of business in Somerset County, New Jersey.

3.      Cowbell is a California LLC with its principal place of business in Alameda County, California.

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### FACTS COMMON TO ALL CLAIMS

**A. Heart of Gold Purchases Cyber Insurance from Counterclaim Defendants.**

6

6.      On July 25, 2023, Counterclaim Defendants entered into an agreement with Heart of Gold to produce commercial cyber insurance coverage to Heart of Gold in exchange for payment.

7.      On that day, Counterclaim Defendants issued Policy No. FLY-CB-2TXEM5Y5U-003 to Heart of Gold (the "***Initial Policy***"). (*See* **Ex. 1** – Initial Policy.)

8.      Spinnaker was listed under the "Company Name" and Cowbell was listed under the "Producer Name:"

(*Id.*, at 1.)

9.      The Initial Policy was effective from August 7, 2023 to August 7, 2024. (*Id.*, at 1.)

10.     Peter Maloney and Torben Ostergaard signed the Initial Policy on behalf of the

Counterclaim Defendants:



(*Id.*, at 23.)

11.     The Initial Policy, *inter alia*, is designed to protect Heart of Gold from security

breach liability per Section I, Subsection 5a:

| | |
|---|---|
| **5.** | **Security Breach Liability** Including Payment Card Industry (PCI) Fines and Penalties |
| | We will pay for: |
| **a.** | **Loss** that the **Insured** becomes legally obligated to pay and **Defense Expenses** as a result of a **Claim** that is **Discovered** during the Policy Period or any extended reporting period, if applicable, for a **Wrongful Act** or a series of **Interrelated Wrongful Acts** taking place on or after Your first date of continuous coverage with Us and before the end of the Policy Period. |

(*Id.*, at 7.)

12.     Per Section IV of the Initial Policy, Counterclaim Defendants have the "right and duty to select counsel and defend [Heart of Gold] against any Claim covered under [Section I, Subsection 5a]:"

**SECTION IV – DEFENSE AND SETTLEMENT**

The provisions contained within this section apply only to Insuring Agreement 5 – Security Breach Liability Including Payment Card Industry (PCI) Fines and Penalties:

We shall have the right and duty to select counsel and defend the **Insured** against any **Claim** covered under Paragraph 5.a of Insuring Agreement 5 – Security Breach Liability Including Payment Card Industry (PCI) Fines and Penalties, even if the allegations of such **Claim** are groundless, false or fraudulent.  However, We shall have the right but not the duty to defend the **Insured** against a **Claim** covered under Paragraph 5.b of Insuring Agreement 5 - Security Breach Liability Including Payment Card Industry (PCI) Fines and Penalties and We shall have no duty to defend the **Insured** against any **Claim** which is not covered under such Insuring Agreement.

(*Id.*, at 9.)

### B.  Heart of Gold Renews its Cyber Insurance Policy with Counterclaim Defendants.

13.     On July 12, 2024, Heart of Gold renewed its cyber policy with Counterclaim Defendants (the "*Renewal Policy*"). (*See* **Ex. 2** – Renewal Policy**.**) The Initial Policy and the Renewal Policy are collectively referred to as the "*Policies*."

14.     The Renewal Policy was effective from August 7, 2024 to August 7, 2025 and contained similar terms as the Initial Policy. (*Id.*, at 1 and *see generally id.*)

15.     Peter Maloney and Torben Ostergaard signed the Renewal Policy on behalf of the Counterclaim Defendants. (*Id.*, at 24)

### C.  Heart of Gold Faces Liability for a Security Breach.

16.     On October 25, 2024, Fadel Elkhairi and Mais Khourdaji filed a complaint (the "*Complaint*") (*See* **Ex. 3** – Complaint) against Heart of Gold and Platinum Real Estate

Professionals, LLC in the Court of Common Pleas, Franklin County, Ohio (Case No. 24-CV-008239) (the "*Lawsuit*").

17.    The Complaint alleged that Heart of Gold was negligent in failing to prevent a business email compromise scam from occurring. (*See generally id*.)

**D.  Heart of Gold Reasonably Did Not Foresee Liability Anytime Sooner.**

18.    The Complaint's alleged events relevant to Heart of Gold took place between February 2024 and March 2024. (*See generally id*.)

19.    Immediately after these events, Heart of Gold's IT vendor conducted a review of its information systems to see if they were infiltrated.

20.    Heart of Gold's IT vendor confirmed that Heart of Gold's information systems were not infiltrated.

21.    Heart of Gold never received anything from Fadel Elkhairi or Mais Khourdaji that indicated they planned on bringing a claim against it.

22.    Consequently, Heart of Gold had no reason to believe it would face liability until the Complaint was filed in October.

**E.  Heart of Gold Provides Timely Notice to Counterclaim Defendants.**

23.    On October 28, 2024, Heart of Gold received the Complaint and Summons.

24.    Ten days after discovering the lawsuit, Heart of Gold had its insurance broker, Robert H. Cooper Jr., file a "Notice of Claim," on November 7, 2024, (the "*Notice*") with Counterclaim Defendants regarding the Complaint and Summons. (*See* **Ex. 4** – Notice.)

25. Mr. Cooper informed Counterclaim Defendants that Heart of Gold's response to the Complaint was due on November 25, 2024, and the Notice thus concerned a "time sensitive" issue. (*Id.*, at 1.)

**F. Counterclaim Defendants Acknowledge Notice.**

26. On November 8, 2024, Cowbell's Claims Counsel, Steven Fields, emailed Heart of Gold a formal acknowledgment of the Notice and assigned Claim No. CL01-FLY-2TXEM5Y5U-003 under the Policies (the "*Claim*"). (*See* **Ex. 5** – Formal Acknowledgment of Notice.)

27. Mr. Fields referred to the Policies as "the Cowbell Policy." (*See id.*)

**G. Counterclaim Defendants Promise to Make a Prompt Decision.**

28. Four days later, on November 12, 2024, Mr. Fields and Heart of Gold's Operations Manager, Clint Hamilton, spoke about the Claim and whether Counterclaim Defendants would provide coverage.

29. Mr. Fields suggested Counterclaim Defendants would not determine if they would provide coverage until after Heart of Gold's separate errors and omissions insurance carrier, The Hanover Atlantic Insurance Company, LTD ("*Hanover*"), decided on whether it would provide coverage.

30. Mr. Fields also indicated he would provide a more complete response within a couple of weeks.

**H. Counterclaim Defendants Fail to Follow Up and Place Heart of Gold at Risk of Default Judgment.**

31. Mr. Fields never followed up prior to Heart of Gold's original response deadline to the Complaint.

32. In fact, he ignored Mr. Hamilton's emails sent on:

- November 13, 2024,

- November 18, 2024, and

- December 4, 2024.

(*See* **Ex. 6** – Ignored Emails.)

33. Heart of Gold reasonably believed Mr. Fields would update it on whether Counterclaim Defendants would provide coverage or not. However, the Complaint's response deadline had passed and forced Heart of Gold to contact Samir B. Dahman and Daniel J. Walsh from Kohrman Jackson & Krantz LLP ("*KJK*") on December 5, 2024.

**I. KJK Prevents Default Judgment and Requests Counterclaim Defendants Give an Answer on Coverage.**

34. Mr. Dahman and Mr. Walsh managed to get a Consent to Plead filed, which extended Heart of Gold's deadline to January 2, 2025.

35. Mr. Dahman contacted Mr. Fields on December 5, 2024, and asked "[i]s Cowbell going to defend this [lawsuit] on behalf of its policyholder." (*See* **Ex. 7** – Email Exchanges between Dahman and Fields.)

12

**J.   Counterclaim Defendants Continue to Delay and Wrongfully Deny Coverage.**

36.     Mr. Fields did not respond until December 6, 2024, and offered his "sincerest apologies for the delay." (*Id.*, at 1-2.)

37.     Mr. Fields additionally wrote, for the first time ever, that "Cowbell is declining coverage for reasons that will be set forth in our formal letter." (*Id.*, at 1.)

38.     After already referring to the Policies as "the Cowbell Policy" in his November 8, 2024 email, Mr. Fields also never disputed that Heart of Gold was Spinnaker and Cowbell's insured in his response to Mr. Dahman. (*See* **Ex. 5** and **Ex. 7**.)

39.     On December 13, 2024, Mr. Dahman emailed a letter to Mr. Fields analyzing how the Policies covered the Claim (the "***Claim Analysis Letter***"). (*See* **Ex. 8** – Claim Analysis Letter.)

40.     For ***41 days*** after Mr. Fields's initial call with Mr. Hamilton, Counterclaim Defendants did not provide an official coverage decision until, on December 23, 2024, they finally provided Heart of Gold their denial letter on Cowbell's letterhead ("***Denial Letter***"). (*See* **Ex. 9** – Denial Letter.)

41.     The Denial Letter states that Counterclaim Defendants declined coverage of the Claim under the Policies, in part, because Heart of Gold's "notice was not as soon as practicable." (*Id.*, at 7.)

13

**K. Hanover Denies Coverage; Counterclaim Defendants Do Not Disagree With Hanover's Position But Suggest Suing Hanover Anyway.**

42. On November 14, 2024, Hanover informed Heart of Gold that Hanover was denying coverage of this dispute.

43. Heart of Gold notified Counterclaim Defendants of this decision on November 18, 2024. (*See* **Ex. 6** at 2.)

44. On February 11, 2025, counsel for Counterclaim Defendants emailed the following to counsel for Heart of Gold:

| | |
|---|---|
| **From:** | Darwick, Gabriel <Darwickg@whiteandwilliams.com> |
| **Sent:** | Tuesday, February 11, 2025 10:27 AM |
| **To:** | Samir B. Dahman |
| **Cc:** | Sunny Horacek; Daniel J. Walsh |
| **Subject:** | RE: Elkhairi v. Heart of Gold Title // 3rd Party Complaint [WWLLP-PHLDMS1.FID4133234] |

Hi Samir,

Sunny forwarded your email.

I do not substantively disagree with Hanover's position. My only point re Hanover was that it may decide to reach a commercial resolution when forced into litigation.

Gabe

(*See* **Ex. 10** – Darwick's Email.)

**L. Counterclaim Defendants Offer No Reasonable Justification for Denying Coverage When They Did Provide Coverage in a Nearly Identical Case.**

45. Counterclaim Defendants have previously provided coverage to an insured that had a nearly identical fact pattern to the Complaint.

46. In *Tran v. Elite Land Title LLC, et al.* (Franklin County Court of Common Pleas, Case No. 23 CV 3402), Counterclaim Defendants provided coverage to its insured, Rolls

Realty, LLC ("*Rolls Realty*") when it was sued, *inter alia*, for negligence in failing to prevent a business email compromise scam from occurring for a residential property purchase. (*See generally* **Ex. 11** – *Tran* Amended Complaint.)

47. On February 28, 2025, Mr. Dahman and Mr. Walsh emailed a letter to Counterclaim Defendants' counsel that explained how *Tran* and the Complaint are almost indistinguishable. (*See* **Ex. 12** – *Tran* Analysis Letter.)

48. As set out in the letter, Rolls Realty filed its notice of claim to Counterclaim Defendants ***7 months*** after it had been informed that the buyer/plaintiff had been defrauded. The notice of claim was also filed during Rolls Realty's renewal policy period even though the incident giving rise to the negligence claim occurred during its initial policy period.

49. Heart of Gold filed its Notice 7 months after it first learned that Fadel Elkhairi and Mais Khourdaji had been defrauded. Moreover, its Notice was filed during its Renewal Policy period even though the incident giving rise to Fadel Elkhairi and Mais Khourdaji's negligence claim occurred during the Initial Policy period.

50. To date, Counterclaim Defendants have offered no reasonable justification for why coverage was provided to Rolls Realty but not Heart of Gold.

### Count I
**(Breach of Contract)**

51. Heart of Gold realleges and incorporates the preceding and following paragraphs as if fully set forth herein.

52.     The Policies are valid contracts between Heart of Gold and Counterclaim Defendants.

53.     Heart of Gold performed under those contracts by making payments and timely filing its Notice.

54.     Counterclaim Defendants breached, *inter alia*, Section I, Subsection 5a of the Policies by not paying for the defense expenses that Heart of Gold has suffered in the Lawsuit.

55.     Counterclaim Defendants breached, *inter alia*, Section I, Subsection 5a of the Policies by refusing to pay for any "loss" (as defined in the same part of the Policies) that Heart of Gold becomes legally obligated to pay.

56.     Counterclaim Defendants breached, *inter alia*, Section IV of the Policies by not defending Heart of Gold in the Lawsuit.

57.     As a proximate result of Counterclaim Defendants' breaches of the Policies, Heart of Gold has incurred and continues to incur defense expenses defending against the Complaint in an amount exceeding $25,000.

## Count II
### (Bad Faith)

58.     Heart of Gold realleges and incorporates the preceding and following paragraphs as if fully set forth herein.

59.     By being valid contracts, the Policies place Heart of Gold and Counterclaim Defendants in privity with each other.

60.     Counterclaim Defendants had no reasonable justification in their communication delays with Heart of Gold.

61.     Counterclaim Defendants also had no reasonable justification in denying coverage to Heart of Gold's Claim under the Policies.

62.     Counterclaim Defendants, again, lacked reasonable justification in advising Heart of Gold to sue Hanover in bad faith.

63.     Counterclaim Defendants additionally lacked reasonable justification in providing coverage to Rolls Realty in the *Tran* case but not to Heart of Gold in the Lawsuit.

64.     Counterclaim Defendants breached their implied contractual duty to good faith and fair dealing by failing to properly communicate with Heart of Gold, denying coverage under the Policies and in light of *Tran*, and for encouraging Heart of Gold to sue Hanover.

65.     Counterclaim Defendants' bad faith has caused additional damages to Heart of Gold that are independent of Counterclaim Defendants' breach of contract, including but not limited to, additional defense expenses in obtaining an extension for its response deadline, lost revenue, increased overhead, lost opportunity cost, reputational harm, and more in an amount exceeding $75,000.

## Count III
### (Declaratory Judgment)

66.     Heart of Gold realleges and incorporates the preceding and following paragraphs as if fully set forth herein.

17

67. An actual and justiciable controversy exists between Heart of Gold and Counterclaim Defendants.

68. The Court should declare that Counterclaim Defendants breached the Policies and must provide coverage for the Claim.

69. The Court should declare that Counterclaim Defendants must reimburse Heart of Gold for its defense expenses incurred in the Lawsuit.

70. The Court should declare that Counterclaim Defendants must defend Heart of Gold against the Complaint.

71. The Court should declare that Counterclaim Defendants must pay for any "loss" (as defined in Section I, Subsection 5a of the Policies) that Heart of Gold becomes legally obligated to pay from the Lawsuit.

72. The Court should declare that Counterclaim Defendants operated in bad faith.

**WHEREFORE**, Heart of Gold prays that:

> ➢ The Court issues judgment in favor Heart of Gold and against Counterclaim Defendants Spinnaker and Cowbell in an amount to be determined at trial exceeding $75,000;

> ➢ The Court issue declaratory judgment in favor of Heart of Gold;

> ➢ The Court awards punitive damages to Heart of Gold; and

> ➢ The Court grants such other and further relief as it deems just and fair.

Respectfully submitted,

/s/ Michael D. Hoenig
Michael D. Hoenig (0093237)
*Trial Attorney*

18

Daniel J. Walsh (0104547)
Kohrman Jackson & Krantz, LLP
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, OH 44114
Tel: 216.696.8700
Email: mdh@kjk.com; djw@kjk.com

*Counsel for Heart of Gold Title, LLC*

## **JURY DEMAND**

Heart of Gold Title, LLC demands a trial by jury on all issues so triable.

/s/ *Michael D. Hoenig*

Michael D. Hoenig (0093237)

## <u>CERTIFICATE OF SERVICE</u>

On June 16, 2025, I caused this *Answer and Counterclaim* to be e-filed with the Clerk of

Courts, which will automatically serve all counsel of record.

/s/ *Michael D. Hoenig*
Michael D. Hoenig (0093237)